# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| SAM KELLEY, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>COREL INC. d/b/a/ COREL SOFTWARE INC., a Delaware business entity,<br><br>Defendant | §<br>§<br>§ Civil Action No.: 1:22-cv-1098<br>§<br>§ **CLASS ACTION COMPLAINT**<br>§<br>§ **DEMAND FOR JURY TRIAL**<br>§<br>§ |

## ORIGINAL CLASS ACTION COMPLAINT

Plaintiff SAM KELLEY, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant COREL INC., d/b/a COREL SOFTWARE INC. ("Defendant" or "Corel") for sending software "updates" that act as malware and destroy customers' open work files based on Corel's false accusation that the copy of CorelDraw is counterfeit, and makes the following allegations based on personal knowledge as to facts pertaining to his own experiences, and on information and belief as to all others:

## NATURE OF THE ACTION

1. Under the guise of anti-counterfeiting measures, Defendant sent an "update" that installed a poison pill in users' copies of its well-known graphic design software, CorelDraw. Corel falsely accused Plaintiff of the class of illegal counterfeiting, destroyed the files the class was working on, and deprived Plaintiff and the class of the benefits of the software they lawfully purchased.

2. To Plaintiff and the class, the "update" was more like a malware transmission. Corel wrongfully compelled Plaintiff and the class to receive the transmission without their knowledge and consent. The transmission has a fatal effect on their ability to use the software.

3. Plaintiff and the class have no problem with anti-counterfeiting—they support Corel's anti-counterfeiting efforts because they purchased their software legally from Corel or through an authorized retail outlet.

4. However, Corel intentionally installed draconian restrictions that unfairly impacted people who had purchased the software legally. Corel's transmission makes the software nearly impossible for Plaintiff and the class to use. Corel hopes that users acquiesce and purchase a new copy of their software.

5. Normally, designers invest hours of valuable time in depicting their desired artwork using CorelDraw. But now, while working on their artwork using the software, the software pops up with warnings saying that the software is counterfeit, and Plaintiff and the class lose the designs they are working on. The program shuts down without an opportunity to save the file, thereby destroying the valuable fruits of the labor of Plaintiff and the class.

6. Therefore, Plaintiff and the class are unable to use the software in any productive manner. In attempting to work on his designs and artwork, Plaintiff routinely loses his work. Even worse, in sessions with his clients, his clients are exposed to Corel's false accusation against Plaintiff that destroy his reputation in front of his clients.

7. Despite intentionally issuing the update that unfairly affects users who lawfully purchased their software, Defendant refuses to issue any remedy.

8. Plaintiff therefore seeks to represent a class of similarly situated victims to obtain actual damages, restitution, and an injunction requiring Defendant to reverse their draconian measures.

## PARTIES

9. Plaintiff SAM KELLEY ("Mr. Kelley") is a natural person and a citizen of Sheridan, Arkansas.

10. Defendant COREL INC. d/b/a COREL SOFTWARE CORP ("Corel") is an entity organized and existing under the laws of the state of Delaware with its principal place of business in Austin, Texas.

## JURISDICTION AND VENUE

11. The Court has original subject matter jurisdiction under 28 U.S.C. 1331, as this case arises under the Computer Fraud and Abuse Act, a federal statute. Alternatively, the Court has original subject matter jurisdiction over the state law claims pursuant to 28 U.S.C. § 1332(d), because the case is brought as a class action pursuant to Fed. R. Civ. P. 23, there are 100 or more members of the proposed Class, the amount in controversy exceeds $5,000,000, exclusive of costs, and Plaintiff and Defendant are diverse parties.

12. This Court has general jurisdiction over Defendant because Defendant's headquarters are located in this District at 3209 Tehama Ct., Austin, Texas 78738.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in this District.

## COMMON FACTUAL ALLEGATIONS

14. Corel is the creator of the well-known graphic design software CorelDraw.

15. Plaintiff and the class purchased and use Corel Draw for academic, personal, and professional graphic design software applications.

16. Approximately 3 years ago, under the guise of "updating" the software and taking anti-counterfeiting measures, Defendant sent an update that installed a poison pill in its well-known graphic design software, thereby depriving Plaintiff and the class of the benefits of the software they purchased.

17. Corel wrongfully compelled Plaintiff and the class to receive the "update" without their knowledge of what the update would do or their permission to install the "update." The

"update" was better characterized as "malware," as it only decreased the functionality of the software and offered no benefit to its users.

18. Plaintiff and the class have no problem with anti-counterfeiting—they purchased their software legally from Corel.

19. However, the Corel malware implemented draconian security measures that now make the software nearly impossible for Plaintiff and the class to use.

20. CorelDraw designers invest hours and hours of time in making complicated designs.

21. While Plaintiff and the class attempt to work on their designs using the software, the software destroys the designers' work if it believes (wrongly or rightly) that the software is counterfeit.

22. Despite having purchases the software, it routinely issues "warnings" that the software is counterfeit. The program shuts down without saving the file. It does not permit the user to save the file.

23. When a client is in a work session, the reputation of Plaintiff and the class is defamed, impacting their livelihoods as graphic designers.

24. Therefore, Plaintiff and the class are unable to use the software in a professional manner. In attempting to work on his designs, Plaintiff routinely loses his work. Even worse, in sessions with his clients, Plaintiff receives false accusations that destroy his reputation in front of his clients.

25. Despite intentionally issuing the update that unfairly affects users who lawfully purchased their software, Defendant refuses to issue any remedy.

26. Plaintiff therefore seeks to represent a class of similarly situated victims to obtain actual damages, restitution, and an injunction requiring Defendant to reverse their draconian anti-counterfeiting measures.

## FACTS SPECIFIC TO MR. SAM KELLEY

27. Mr. Kelley is a graphic designer who uses CorelDraw for his business.

28. In 2012, Mr. Kelley purchased a 10-license copy of CorelDraw software from Computer City for $798 (Seven hundred ninety eight dollars). Corel's user agreement designates California law as governing.

29. Approximately 3 years ago, Plaintiff noticed that the software started to behave differently after receiving an "update."

30. Corel did not advise Plaintiff or the Class members of the effects of any update or transmission.

31. On one occasion, after working on a design in Corel Draw for several hours, he received a pop-up warning saying that the software is counterfeit.

32. The program shut down without saving the file. It also did not permit Mr. Kelley the option to save the file.

33. Plaintiff's important artwork that he had spent several hours making was destroyed.

34. On another occasion, Plaintiff experienced the problem in front of a client, which made the problem even worse.

35. When the client saw Mr. Kelley being accused of counterfeiting, even though Mr. Kelley attempted to clarify that the accusation was false, the incident impacted Mr. Kelley's reputation as a graphic designer. Mr. Kelley's integrity was attached in front of his client, which impacted his livelihood and ability to perform services as a graphic designer.

36. Plaintiff found that others were experiencing the same problem. Plaintiff saw that a "fix" for the problem was posted online.

37. Plaintiff must search Corel's %appdata% folder on his computer to open the Messages folder, and then delete that folder before opening the software, in order to get the software to act normally.

38. But this solution is a half measure that treats only the symptoms of the disease, as it must be performed every few hours to prevent CorelDraw from destroying his work.

39. Therefore, Plaintiff and the class are unable to use the software in a professional manner. In attempting to work on his designs, Plaintiff routinely loses his work. Even worse, in sessions with his clients, Plaintiff receives false accusations that destroy his reputation in front of his clients.

40. Plaintiff would like to continue to use his software as it functioned prior to the "update." But if he had known about these draconian anti-counterfeiting measures, he would have never purchased the software.

41. As a consequence of Corel's intentional conduct, Plaintiff's Corel software has been damaged.

## CLASS ALLEGATIONS

42. **Class Definition**: Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of Plaintiff and the Class defined as follows:

**Class**. All persons and entities in the United States who 1) purchased a copy of CorelDraw and 2) received Defendant's anti-counterfeiting message.

43. The following people and entities are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents

have a controlling interest and its current or former employees, officers and directors; (3) persons and entities who properly execute and file a timely request for exclusion from the Class; (4) persons and entities whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons and entities.

44. Plaintiff reserves the ability to modify the definition of the proposed Class before the Court determines whether class certification is warranted.

45. The requirements of Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) are met in this case.

46. The Fed. R. Civ. P. 23(a) elements of Numerosity, Commonality, Typicality, and Adequacy are all satisfied.

47. **Numerosity**: The exact number of members of the Class is unknown and not available to Plaintiff, but it is clear that individual joinder is impracticable. On information and belief, Defendant has thousands of customers who use CorelDraw software and have likely received the transmission. Members of the Class can be identified through Defendant's records or by other means.

48. **Commonality:** Commonality requires that the Class members' claims depend upon a common contention such that determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke. Here, there is a common contention for all Class members to as to whether Defendant unfairly altered the software of Plaintiff and the Class after they purchased it.

49. **Typicality**: Plaintiff's claims are typical of the claims of other Class members in that Plaintiff and the Class members sustained damages arising out of Defendant's uniform conduct sending the malware transmission.

50. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class members. Plaintiff's claims are made in a representative capacity on behalf of the Class members. Plaintiff has no interests antagonistic to the interests of the other members of the proposed Class and are subject to no unique defenses. Plaintiff has retained competent counsel to prosecute the case on behalf of Plaintiff and the proposed Class. Plaintiff and Plaintiff's counsel are committed to vigorously prosecuting this action on behalf of the Class members and have the financial resources to do so.

51. **This case also satisfies Fed. R. Civ. P. 23(b)(2) - Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge to those practices hinge on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

52. **This case also satisfies Fed. R. Civ. P. 23(b)(3) - Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual Class members. Common questions and/or issues for the Class include, but are not necessarily limited to the following:

   i. Whether Defendant's conduct constitutes a violation of the Computer Fraud and Abuse Act;

   ii. Whether Defendant's conduct constitutes a violation of the California Comprehensive Computer Data Access and Fraud Act, Cal. Penal Code § 502(c)(4) and (5),

    iii. Whether Defendant's conduct constitutes a violation of the covenant of good faith and fair dealing;

    iv. Whether Defendant's conduct constitutes False Advertising;

    v. Whether Defendant's conduct constitutes a violation of the Fraudulent, Unlawful, and Unfair Prongs of Cal. Bus. & Prof. Code § 17200;

    vi. The method of calculation and extent of damages for Plaintiff and the Class members;

53. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. The damages suffered by individual Class members will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual Class members to obtain effective relief from Defendant's misconduct. Even if Class members could mount such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be enhanced, and uniformity of decisions ensured.

## COUNT I

**Computer Fraud and Abuse Act**
**18 U.S.C. § 1030(a)(5)(A)**
**(On Behalf of Plaintiff and the Class)**

54. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

55. 18 U.S.C. § 1030(a)(5)(A) prohibits knowingly causing the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causing damage without authorization, to a protected computer.

56. Plaintiff's computer on which he uses CorelDraw software is a protected computers under 18 U.S.C. § 1030(e)(2)(B).

57. Corel sent or caused to be sent a transmission of a program, information, code, or command in the form of an "update" to the Class computers.

58. Corel intentionally and knowingly sent or caused to be sent this transmission to the Class computers.

59. Corel did not have permission or authorization from Plaintiff and the Class members to make any modifications to the Class computers.

60. Corel intentionally caused damage to the Class computers. Corel's transmission caused damage to Class computer by erasing, modifying, or altering the code that had enabled CorelDraw to function properly. Corel caused damage by rendering Plaintiff's and Class members' CorelDraw software practically useless. CorelDraw software was useless and/or requires performing a remedial fix every few hours to maintain functionality as a result of the "update" going forward.

61. Corel did not have permission or authorization from Plaintiff and the Class members to cause damage to the CorelDraw software of Plaintiff and the Class members.

62. As a direct and proximate result of this misconduct, Corel caused damage to Plaintiff and the owners of CorelDraw within the meaning of 18 U.S.C. § 1030(e)(8). The functioning of the software was disrupted and a (false) error message was displayed that the cause was anti-counterfeiting.

63. Plaintiff and the Class members suffered losses within the meaning of the CFAA, 18 U.S.C. § 1030(e)(11). Plaintiff's software is practically inoperative, even though he had lawfully purchased 10 licenses in 2012 and he still holds all the licenses. Plaintiff and the class now have to perform the fix every few hours or purchase new software.

64. The transmission also caused loss to Plaintiff and Class members, as they had to expend money, time, and labor to investigate and repair their compromised software.

65. Based on Corel's violation of the CFAA, Plaintiff and Class members seek damages, injunctive and other equitable relief, and all other relief provided for under the law.

## COUNT II

**Violation of the California Comprehensive Computer Data Access and Fraud Act, Cal. Penal Code § 502**
**(On Behalf of Plaintiff and the Class)**

66. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

67. California Penal Code § 502 prohibits knowing and unauthorized access to computers, computer networks, and computer systems.

68. The computers of Plaintiff and the Class are "computers" and part of a "computer network" or "computer system" under this statute.

69. Corel's transmission is a "computer program or software" and "computer contaminant" under Cal. Penal Code §§ 502(b)(3) and (12).

70. Corel knowingly sent the transmission and knowingly modified, damaged, destroyed, recorded, or transmitted information to the software without the intent or permission of Plaintiff and Class members.

71. Corel violated California Penal Code § 502 in at least two respects:

    a. In violation of Cal. Penal Code § 502(c)(4), Corel accessed and without authorization added, altered, damaged, deleted, or destroyed Class members' data, programs, or software.

  b.  In violation of Cal. Penal Code § 502(c)(5), by disabling the software, Corel caused the disruption and denial of computer services to authorized users, such as Plaintiff and the Class members.

72. As a direct and proximate result of this misconduct, Corel caused damage to the computers of Plaintiff and the Class members, who suffered losses. Plaintiff's copies of Corel were purchased new. Now Plaintiff and the Class have to pay to purchase new software if they cannot obtain relief from Corel.

73. Corel's transmission caused damage and loss to Plaintiff and Class members, including by destroying open work files and preventing use of lawfully purchased software.

74. The transmission also decreased the market value of the software generally, because the software is now lacking in functionality they had previously. Plaintiff had invested significant amounts learning how to become an expert in CorelDraw which he expected to do for many years. However, after the "update," Plaintiff and the Class members cannot use their CorelDraw software for their professional business.

75. The update also caused loss to Plaintiff and Class members in them being forced to expend money, time, and labor to investigate and repair the software, although in the end the efforts were nearly futile, as the only solution is deleting the Messages folder every few hours.

76. The CDAFA allows an individual who "suffers damage or loss by reason of a violation" of the statute to bring a private civil action. Cal. Penal Code § 502(e)(1).

77. Based on Corel's violation of Penal Code § 502, Plaintiff and Class members seek recovery of economic damages, injunctive and other equitable relief, as well as reasonable attorney's fees and costs, and all other relief provided for under the law.

## COUNT III

### Implied Covenant of Good Faith and Fair Dealing
### (On Behalf of Plaintiff and the Class)

78. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

79. Plaintiff and members of the Class purchased CorelDraw software directly or from third party retailers.

80. Plaintiff and members of the Classes established contracts with CorelDraw.

81. Pursuant to the contract, California law applies to the relationship.

82. "Within every contract is an implied covenant of good faith and fair dealing. This covenant is breached when a party to a contract acts in a manner that, although not expressly forbidden by any contractual provision, would deprive the other party of the right to receive the benefits under their agreement." *Brehm v. 21st Century Ins. Co.*, 166 Cal. App. 4th 1225, 1235 (Cal. Ct. App. 2008).

83. Based on the implied covenant of good faith and fair dealing, Corel had an obligation to refrain from materially reducing functionality the program after it was purchased. Corel was required to take reasonable steps to refrain from interfering with Plaintiff's use of the software. Indeed, if the contract were interpreted to not require *anything* of CorelDraw, it would be rendered illusory.

84. However, as described above, Plaintiff and members of the Classes did not receive the expected benefits from their CorelDraw software, as Corel sent an "update" that accused them of counterfeiting, disabled their software, and destroyed their work files.

85. Plaintiff and members of the Classes suffered damages as a result of Corel's breach of the implied covenant of good faith and fair dealing, as they did not receive anything close to the full value of the contractual benefits that they bargained for.

86. Plaintiff and Class members, these damages come in the form of not being able to use the software they wanted and losing work on an ongoing basis.

87. Accordingly, Plaintiff, individually, and on behalf of the Classes, seeks damages, rescission, injunctive and other equitable relief, and all other relief provided for under the law.

## COUNT IV

### California False Advertising Law
### Cal. Bus. & Prof. Code § 17500
### (On Behalf of Plaintiff and the Class)

88. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

89. Corel violated Cal. Bus. & Prof. Code § 17500 by using false and misleading statements, and material omissions, to promote the sale of CorelDraw.

90. At the time of sale, Corel made material omissions regarding its business practice of using the pretext of updating software as a scheme to sell more new software. Plaintiff and the Class wanted to use CorelDraw as it functioned prior to the "update." Had Plaintiff and Class members known that Corel employed such tactics, they would not have purchased CorelDraw.

91. Corel made material omissions regarding how the software would operate. Corel did not disclose that it would accuse owners of lawfully purchased copies of counterfeiting.

92. Corel also made false statements to Plaintiff. Corel stated that the cause of the software malfunction was because it was counterfeited. Corel hoped that Plaintiff would simply give up and purchase a new copy of the software.

93. As a direct and proximate result of Corel's false statements and omissions, Plaintiff and Class members have suffered injury-in-fact and have lost money and property.

94. Plaintiff and the class were left with uncertainty as to the best course of action after seeing the false counterfeiting messages. Plaintiff and Class members had to either try deleting the Messages folder every few hours or purchase a new copy of the software in hopes that Corel would not deem that version counterfeit. Unless the Court enjoins further unlawful acts by Corel, Plaintiff and Class members face uncertainty as to which of these choices would minimize their damage.

95. Plaintiff and Class members seek to enjoin, under Bus. & Prof. Code § 17535, the violations described herein and to require Corel to issue appropriate corrective disclosures and software fixes.

96. Corel's false advertising will continue to harm consumers unless and until it is enjoined.

97. Plaintiff and Class members therefore seek an order requiring Corel to cease its false advertising and unlawful practices, provide full restitution of all monies Corel derived from its false advertising, interest at the highest rate allowable by law, and an award of reasonable attorney's fees and costs under applicable law, including Code of Civil Procedure § 1021.5.

98. Plaintiff are entitled to and seek restitution, unjust enrichment, and public as well as private injunctive relief under this section.

## COUNT V

**California Unfair Competition Law – Fraudulent Prong**
**Cal. Bus. & Prof. Code § 17200**
**(On Behalf of Plaintiff and the Class)**

99. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

100. The fraudulent prong of California's Unfair Competition Law prohibits business practices that are likely to deceive the public.

101. Corel practice of sending an "update" that disabled functioning software and destroyed open work files, and then misrepresenting the cause of the malfunction, is a practice that is likely to deceive members of the public.

102. Plaintiff and the class were left with uncertainty as to the best course of action after seeing the false counterfeiting messages. Plaintiff and Class members had to either try deleting the Messages folder every few hours or purchase a new copy of the software in hopes that Corel would not deem that version counterfeit. Unless the Court enjoins further unlawful acts by Corel,

Plaintiff and Class members face uncertainty as to which of these choices would minimize their damage.

103. Corel's practices are fraudulent under this section because members of the public are likely to be deceived by this practice.

104. Plaintiff and Class members own software received Corel's malware transmission, and thus the value of their software has been decreased and their work files have been destroyed.

105. Plaintiff and Class members have no adequate remedy at law because of the ongoing uncertainty as to the functioning of the software and whether Corel will try to interfere with the functioning of their software again. Plaintiff would like to continue using the software as it performed before the update.

106. Plaintiff is entitled to and seek restitution, unjust enrichment, and public as well as private injunctive relief under this section.

## COUNT VI

### California Unfair Competition Law – Unfair Prong
### Cal. Bus. & Prof. Code § 17200
### (On Behalf of Plaintiff and the Class)

107. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

108. The unfair prong of California's Unfair Competition Law prohibits unfair business practices that either offend an established public policy or that are immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

109. Corel sending a malware transmission that caused a loss of functionality to its own customers, misinforming the customers about the cause of the damage is a practice that offend an established public policy or that are immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

110. The utility of Corel transmissions and untrue statements are very low (as they are fraudulent and anti-competitive) and are vastly outweighed by the serious harm incurred by Plaintiff and Class members.

111. Any legitimate purpose or benefit of Corel conduct is substantially outweighed by the harm to consumers, competition, and the general public. There is no legitimate reason why Corel should be allowed to secretly install updates disabling previous capabilities without providing its customers a fully informed option to decline the update. There is no legitimate reason why Corel should be allowed to obfuscate or deceive its customers about the reasons why their CorelDraw software no longer function Corel's role in bringing about the sudden cessation of functionality. If Corel is truly conducting legitimate procedures, then it should inform the customer that the procedures will be conducted, or have been conducted, and not just make vague and misleading statements such anti-counterfeiting statements that conceal Corel's active and purposeful role in bringing about the problem or provide no advice to customers other than to buy new CorelDraw software.

112. Plaintiff and the class were left with uncertainty as to the best course of action after seeing the false counterfeiting messages. Plaintiff and Class members had to either try deleting the Messages folder every few hours or purchase a new copy of the software in hopes that Corel would not deem that version counterfeit. Unless the Court enjoins further unlawful acts by Corel, Plaintiff and Class members face uncertainty as to which of these choices would minimize their damage.

113. Plaintiff and Class members have incurred and continue to incur damages that are actual and recognized by statute in the form of damaged software and destroyed work files, and loss of money or property.

114. Plaintiff is entitled to and seek restitution, unjust enrichment, and public as well as private injunctive relief under this section.

## COUNT VII

### California Unfair Competition Law – Unlawful Prong
### Cal. Bus. & Prof. Code § 17200
### (On Behalf of Plaintiff and the Class)

115. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

116. The unlawful prong of California Business and Professions Code § 17200 prohibits any unlawful business practice.

117. Each of Corel's malicious transmissions constitutes a violation of 18 U.S.C. § 1030(a)(5)(A) of the CFAA, Cal. Penal Code § 502, the covenant of good faith and fair dealing, California's False Advertising Law, the Fraudulent and Unfair prongs of Cal. Civ. Code § 17200, as described herein, and all constitute separate and cumulative violations of the unlawful prong of § 17200.

118. Plaintiff and Class members have incurred damages in the form of a software with reduced functionality and ruined work files.

119. Plaintiff and Class members are authorized to pursue a private right of action against Corel under § 17204.

120. Plaintiff and the class were left with uncertainty as to the best course of action after seeing the false counterfeiting messages. Plaintiff and Class members had to either try deleting the Messages folder every few hours or purchase a new copy of the software in hopes that Corel would not deem that version counterfeit. Unless the Court enjoins further unlawful acts by Corel, Plaintiff and Class members face uncertainty as to which of these choices would minimize their damage.

121. Plaintiff is entitled to and seek restitution, unjust enrichment, and public as well as private injunctive relief under this section.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class defined above, pray for the following relief:

A. An order certifying the Classes as defined above, appointing Plaintiff as the representative of the Class, and appointing Plaintiff's counsel as Class Counsel;

B. An order declaring that Defendant's actions, as set out above, violate the CFAA under 18 U.S.C. § 1030(a)(5)(A);

C. An order declaring that Defendant's actions, as set out above, violate California Penal Code § 502(c)(4)-(5);

D. An order declaring that Defendant's actions, as set out above, violate the implied covenant of good faith and fair dealing;

E. An order declaring that Defendant's actions, as set out above, violate the California False Advertising Law, Cal. Bus. & Prof. Code § 17500;

F. An order declaring that Defendant's actions, as set out above, violate the Fraudulent, Unfair, and Unlawful prongs of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200;

G. An injunction requiring Defendant to cease the unlawful business practices described herein and otherwise protecting the interests of Plaintiff and the Class, including requiring Corel to reverse the effects of its "update" insofar as they render once-functioning software to malfunction, and prohibiting Corel from sending such transmissions in the future without obtaining the fully informed prior consent of each CorelDraw owner;

H. An order awarding restitution, unjust enrichment, other equitable relief, and damages to Plaintiff and the Classes, including punitive damages;

I. An award of reasonable attorney's fees and costs pursuant to Cal. Civ. Proc. Code § 1021.5, and Cal. Penal Code §§ 502(e)(1) and (2).

J. Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated: October 27, 2022         Respectfully submitted,

**ELLZEY & ASSOCIATES, PLLC**

 /s/Jarrett L. Ellzey
Jarrett L. Ellzey
Texas Bar No. 24040864
Leigh Montgomery
Texas Bar No. 24052214
Alexander G. Kykta
Texas Bar No. 24107841
1105 Milford Street
Houston, Texas 77066
Telephone: (713) 554-2377
Facsimile: (888) 276-3455
jarrett@ellzeylaw.com
leigh@ellzeylaw.com
alex@ellzeylaw.com

and

By:  /s/ Mark L. Javitch
Mark L. Javitch (California SBN 323729)*
JAVITCH LAW OFFICE
480 S. Ellsworth Ave
San Mateo CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 648-0705
mark@javitchlawoffice.com

*Attorneys for Plaintiff and the Putative Class*
*pending pro hac vice admission